**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| BILLY BURKE, | 3:10-cv-00582-LRH (WGC) |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff Billy Burke's (Plaintiff) Motion for Reversal of the Commissioner's Decision. (Doc. #8.)[1] Defendant Commissioner filed a Cross-Motion to Affirm (Doc. # 10) and Opposition (Doc. # 9) to Plaintiff's Motion for Reversal.[2] After a thorough review, the court recommends that Plaintiff's motion be denied and Defendant Commissioner's motion be granted.

### I. FACTUAL AND PROCEDURAL BACKGROUND

At the time of the Commissioner's final decision, Plaintiff was a forty-nine-year-old man who had received a high school diploma and attended college for two years. (Administrative Record (AR) 37-38.) Plaintiff previously worked as a commercial truck driver

---

[1] Refers to court's docket number.

[2] These documents are identical but were separately docketed by the Clerk.

for twenty (20) years, and as an auto mechanic in a repair shop for approximately six (6) years. (AR 38-39.)

On August 10, 2005, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging that he became disabled on March 1, 2004, due to lumbar arthritis, cervical arthritis, residuals of left carpal tunnel, status post hernia surgery with no recurrence, and depressive disorder. (AR 63-70 .) The Commissioner denied Plaintiff's application initially and upon reconsideration. (AR  74-84.) Plaintiff requested a hearing to challenge the Commissioner's determination. (AR 72.)

On April 22, 2009, Plaintiff, represented by counsel, appeared and testified at the hearing before the Administrative Law Judge (ALJ). (AR 33-62.) The ALJ followed the five-step procedure for evaluating disability claims, set forth in 20 C.F.R. § 404.1520, and issued a written decision on July 24, 2009, finding Plaintiff "not disabled" as defined in the Social Security Act and denying the claim for DIB. (AR. 17-28 .) Plaintiff appealed the decision, and the Appeals Council denied review. (AR 3-5.) Thus, the ALJ's decision became the final decision of the Commissioner.

Plaintiff now appeals the decision to the district court, arguing that the ALJ improperly relied on the Medical Vocational Guidelines at step five to determine that Plaintiff could perform work in the national economy. (Doc. # 8.)

## II.  STANDARD OF REVIEW

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S.

2

389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F. 3d 748, 749 (9th Cir. 1995) (citation omitted). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Id*. at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The initial burden of proof rests upon the claimant to establish disability. 20 C.F.R. § 404.1512(a); *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986) (citations omitted). To meet this burden, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423 (d)(1)(A).

## III. DISCUSSION

**A. SEQUENTIAL PROCESS AND ALJ FINDING**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If at any step the Social Security Administration (SSA) can make a finding of disability or nondisability, a determination will be made and the SSA will not further review the claim. 20 C.F.R. §§404.1520(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§ 404.1520(a)(4)(i),(b); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combinations of impairments are "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii),

3

1  (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the
2  claimant's physical or mental ability to do basic work activities. *Id.* Basic work activities are
3  "the abilities and aptitudes necessary to do most jobs[,]" which include: "(1) [p]hysical
4  functions such as walking, standing, sitting, lifting, pushing, pulling reaching, carrying, or
5  handling; (2) [c]apacities for seeking, hearing, and speaking; (3) [u]nderstanding, carrying
6  out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding
7  appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with
8  changes in a routine work setting." 20 C.F.R. §§ 404.1521. If a claimant's impairment is so
9  slight that it causes no more than minimal functional limitations, the Commissioner will find
10 that the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). If, however, the
11 Commissioner finds that the claimant's impairment is severe, the Commissioner proceeds to
12 step three. *Id*.

13 In the third step, the Commissioner determines whether the impairment is equivalent
14 to one of a number of specific impairments listed in 20 C.F.R. pt. 404, subpt. P, app.1 (Listed
15 Impairments). 20 C.F.R. §§ 404.1520(a)(4)(iii), (d). The Commissioner presumes the Listed
16 Impairments are severe enough to preclude any gainful activity, regardless of age, education,
17 or work experience. 20 C.F.R. §404.1525(a). If the claimant's impairment meets or equals one
18 of the Listed Impairments, and is of sufficient duration, the claimant is conclusively
19 presumed disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d). If the claimant's impairment is
20 severe, but does not meet or equal one of the Listed Impairments, the Commissioner
21 proceeds to step four. *Yuckert*, 482 U.S. at 141.

22 In step four, the Commissioner determines whether the claimant can still perform
23 "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), (f). Past relevant work is that
24 which a claimant performed in the last fifteen (15) years, which lasted long enough for him
25 or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a). The ALJ
26 reviews the claimant's "residual functional capacity" (RFC) and the physical and mental
27 demands of the work previously performed. *See id.*; *see also Berry v. Astrue*, 622 F.3d 1228,
28

4

1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545. In determining RFC, an ALJ must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. *See* 20 C.F.R. § 404.1545(a).

At step four, the ALJ may consider any of the claimant's daily activities that "may be seen as inconsistent with the presence of a condition which would preclude all work activity." *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of disability benefits where claimant could "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries"); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding denial of benefits based in part on determination that claimant performed daily activities that were transferrable to a work setting); *compare Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (concluding activities not transferrable to work setting); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (claimant should not be "penalized for attempting to lead [a] normal [life] in the face of [her] limitations"); *Fair v. Bowen*, 885 F.2d 597, 603 (noting that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. §§ 404.1520(f); *see also Berry*, 662 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform work available in the national economy. 20 C.F.R. §§ 404.1520(e), (f); *see also Yuckert*, 482 U.S. at 141-142, 144. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. If the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the ALJ determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

In the present case, the ALJ applied the five-step sequential evaluation process and found, at step one, that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of March 1, 2004. (AR 19.) At step two, the ALJ found that it was established that Plaintiff suffered from the severe impairments of lumbar arthritis, cervical arthritis, residuals of left carpal tunnel, status post hernia surgery with no recurrence, and depressive disorder. (AR 19.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the Listed Impairments. (AR 20-22.) At step four, the ALJ determined that Plaintiff had the RFC to perform the full range light work[3], except occasionally climb ladder/rope/scaffolds, stoop, kneel, crouch or crawl, occasional overhead reaching with the left upper extremity, and perform simple, repetitive tasks without frequent contact with others consistent with unskilled work. (AR 22.) The ALJ found that Plaintiff was unable to perform any past relevant work. (AR 26.) At step five, the ALJ noted that Plaintiff was forty-four at the alleged

---

[3] Light work involves lifting no more than twenty (20) pounds, with frequent lifting or carrying of objects weighing up to ten (10) pounds; a job is in this category if it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

6

1  onset date, has a high school education, can communicate in English, and coupled with his
2  work experience and RFC, he consulted the Medical-Vocational Guidelines (the Grids), 20
3  C.F.R. Part 404, Subpart P, Appendix 2, and found that jobs exist in significant numbers in
4  the national economy that Plaintiff could perform. (AR 26-27.) In conclusion, the ALJ
5  determined that Plaintiff was not disabled from his alleged onset date of March 2, 2004,
6  through the date of the decision. (AR 28.)

**B. STEP FIVE DETERMINATION**

Plaintiff argues that he claimed to have suffered from a non-exertional impairment, *i.e.*, depressive disorder and postural and manipulative limitations, and therefore, the ALJ was required to consult a Vocational Expert (VE), and not simply rely on the Grids, to determine whether Plaintiff could perform a job in the national economy. (Doc. # 8 at 4-6.)

The Commissioner argues an ALJ is permitted to rely on the Grids as long as the non-exertional limitations do not significantly limit the range of work permitted by the exertional limitations. (Doc. # 9, Doc. # 10 at 4.) Here, the Commissioner asserts that the ALJ founded that the limitations imposed on Plaintiff's ability to perform light work had little or no effect on the range of work necessary at the light exertional level; therefore, the ALJ properly relied on the Grids in making his step five determination. (*Id.* at 5.)

At step five, the Commissioner must show that the claimant can perform work that exists in significant numbers in the national economy, and can meet this burden either by taking the testimony of a VE or by relying on the Grids. *See Lockwood v. Commissioner Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (citation omitted). "The grids are matrices of the four factors identified by Congress- physical ability, age, education, and work experience- and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Id.* (internal quotation marks and citation omitted).

The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and

1  medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 204.00. Each grid has various
2  combinations of factors relevant to a claimant's ability to find work, including the claimant's
3  age, education and work experience. *Id.* For each combination of factors, the Grids direct a
4  finding of disabled or not disabled based on the number of jobs in the national economy in
5  that category. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00.

6  "However, the grids are predicated on a claimant suffering from an impairment which
7  manifests itself by limitations in meeting the strength requirements of jobs ('exertional
8  limitations'); they may not be fully applicable where the nature of a claimant's impairment
9  does not result in such limitations ('non-exertional limitations')." *Lounsburry v. Barnhart*,
10 468 F.3d 1111, 1115 (9th Cir. 2006) (citations omitted). "The reason for this limitation on the
11 grids' application is that, despite having the residual functional capacity to perform a full
12 range of unskilled occupations at a given exertional level, a claimant may not be able to adjust
13 to those jobs because of non-exertional limitations." *Id.* (citation omitted). "In particular,
14 non-exertional impairments-including postural and manipulative impairments such as
15 difficulty reaching, handling, stooping, climbing, crawling, or crouching- may, if sufficiently
16 severe, limit a claimant's functional capacity in ways not contemplated by the grids." *Id.*
17 (citations omitted). Thus, "[t]he grids should be applied only where a claimant's functional
18 limitations fall into a standardized pattern 'accurately and completely' described by the
19 grids." *Id.* (internal quotations and citations omitted).

20 "Where a claimant suffers from both exertional and non-exertional limitations, the
21 ALJ must consult the grids first." *Lounsburry*, 468 F.3d at 1115 (citation omitted). "Because
22 the grids are not designed to establish automatically the existence of jobs for persons with
23 both severe exertional and non-exertional impairments, they may not be used to direct a
24 conclusion of *nondisability*." *Id.* at 1116 (emphasis original).

25 It should be noted, however, that the "bar on exclusive reliance on the grids is limited
26 by its requirement that the nonexertional impairments invoked must be significant enough
27 to limit further the range of work permitted by exertional limitations before precluding

28                                            8

application of the grids." *Lounsburry*, 468 F.3d at 1115 n. 2 (citations omitted); *see also Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (finding that vocational expert is required only when there are significant and sufficiently severe non-exertional limitations not accounted for in the Grids).

Here, the ALJ found that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except he could only occasionally climb ladder/rope/scaffolds, stoop, kneel, crouch or crawl; he could occasionally reach overhead with the left upper extremity; and he could perform simple, repetitive tasks without frequent contact with others consistent with unskilled work. (AR 22.) The ALJ specifically found that Plaintiff's additional limitations "have little or no effect on the occupational base of unskilled light work." (AR 27.) He noted that if a person can stoop, kneel, and crouch *occasionally* in order to lift objects, the sedentary and light occupational bases are intact. (AR 27.) The ALJ found that crawling is rarely required, even in arduous work, and limitations on the ability to crawl are of little significance in the broad world of work. (AR 27.) The ALJ went on to find that Plaintiff's capacity has not been significantly affected by his limitations to occasionally climb ladder/rope/scaffolds because most jobs at the light level do not require climbing ladder/rope scaffolds. (AR 27.) The ALJ stated that the limitation of occasional overhead reaching with the left upper extremity did not significantly erode the full range of light work because Plaintiff was only slightly limited and had no limitation on the use of his right upper extremity. (AR 27.) Finally, the ALJ noted that the limitations to unskilled work of having infrequent contact with others would have little or no effect on the occupational base of light work. (AR 27.)

Here, it is clear that the ALJ did not find Plaintiff's non-exertional impairments to be severe, or even significant. Therefore, the court finds that the ALJ was justified in relying on the Grids as a framework for his determination, and not taking testimony from a VE.

///

///

9

## IV. CONCLUSION

After carefully reviewing the record as a whole, the district court should find there is substantial evidence to support the ALJ's determination.

## V. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal of the Commissioner's Decision (Doc. #8) be **DENIED.**

**IT IS FURTHER RECOMMENDED** that the Defendant Commissioner's Cross-Motion for Summary Judgment (Doc. #10) be **GRANTED** and that the decision of the ALJ be **AFFIRMED**.

DATED:   February 6, 2012

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE